Robins Kaplan LLP
Michael F. Ram (SBN 104805)
mram@robinskaplan.com
Susan S. Brown (SBN #287986)
sbrown@robinskaplan.com
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:    650 784 4040
Facsimile:    650 784 4041

Epps Holloway DeLoach & Hoipkemier, LLC
Adam L. Hoipkemier *[Pro Hac Vice Application To Be Filed]*
adam@ehdhlaw.com
Kevin E. Epps *[Pro Hac Vice Application To Be Filed]*
kevin@ehdhlaw.com
1220 Langford Drive, Bldg. 200
Watkinsville, GA 30677
Telephone:    706 508 4000
Facsimile:    706 842 6750

Turke & Strauss LLP
Samuel Strauss *[Pro Hac Vice Application To Be Filed]*
sam@turkestrauss.com
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
Telephone: 608 237 1774
Facsimile: 608 509-4423

*Attorneys for Plaintiff and Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDI VARE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PNC BANK, N.A.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW AND BREACH OF CONTRACT**<br><br>**CLASS ACTION** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**Summary** .................................................................................................................... **1**

**Parties** ....................................................................................................................... **2**

**Jurisdiction** .............................................................................................................. **2**

**Factual Allegations** ................................................................................................ **2**

      A.    Borrowers Pay For and the FHA Supplies Mortgage Insurance to Lenders ........... 2

      B.    The FHA Prohibits Lenders From Collecting Post-Payment Interest On FHA-Insured Loans, Unless They Provide The FHA-Approved Form Disclosure. ............................................................................................................ 3

      C.    Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans. ................................................................................................. 8

      D.    PNC Did Not Provide A FHA or HUD-Approved Disclosure To Plaintiff Before Collecting Post-Payment Interest. ............................................................ 10

**Class Action Allegations** .................................................................................... **12**

**(Violation of California Unfair Competition Law – Unlawful and Unfair Business Practice)** ................................................................................................................. **14**

**Relief Requested** ................................................................................................... **17**

## Summary

1.     PNC Mortgage, a division of Defendant PNC Bank, N.A. ("PNC"), has a systematic practice of collecting "post-payment" interest on loans insured by the Federal Housing Administration without complying with the uniform provisions of the promissory notes and the FHA regulations governing these loans.  As a result, PNC has collected post-payment interest in an unlawful manner. Through this action, Plaintiff seeks to recover restitution and damages for those class members already injured by PNC and injunctive relief barring such conduct in the future.

2.     Post-payment interest refers to interest that a lender collects **after** the borrower has paid the **full** unpaid principal of the loan.  For example, if a borrower pays off the loan in full on August 5, and the lender continues collecting interest for the remainder of August, the interest collected after August 5 is post-payment interest.

3.     HUD regulations prohibit lenders from collecting post-payment interest unless two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender provides the borrower with "**a form approved by the [FHA]**."  24 C.F.R. § 203.558 (c) (2014) (emphasis added).

4.     HUD requires use of its approved form because the form explains to borrowers, at the appropriate time, that the lender is seeking to collect post-payment interest, the terms under which the lender can collect post-payment interest, and how they can avoid such charges.  *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8 (C).

5.     A promissory note governs the contractual relationship between borrowers and lenders, and lenders issuing FHA-insured loans must include certain uniform provisions in the notes for these loans.  Among other things, the uniform provisions provide that the lender may collect post-payment interest for the remainder of the month in which full payment is made, but only "to the extent . . . permitted by [FHA] regulations."  Multistate – FHA Fixed Rate Note, USFHA.NTE, attached as Exhibit 1, at 2.

6.     Although the uniform provisions of the note, HUD handbooks, and HUD regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with a HUD-approved form, PNC does not use the approved form attached to HUD handbook 4330.1 or the "Payoff Procedure Disclosure Form" hyperlinked in HUD handbook 4000.1.

Instead, PNC uses its own unauthorized form, which is not approved by HUD and does not fairly disclose the terms under which PNC can collect post-payment interest or properly explain how borrowers can avoid such charges.

7.    Because PNC does not use the HUD-approved form as required by both the uniform provisions of the note, the HUD handbooks and HUD regulations, PNC has no right to collect post-payment interest from borrowers.  Yet PNC has unlawfully collected post-payment interest from Plaintiff and the class of borrowers of FHA-insured loans.  Through this class action, Plaintiff seeks to recover the interest unlawfully collected from those class members.

**Parties**

8.    Plaintiff Sandi Vare ("Vare") is a citizen of California, residing in American Canyon, California.  In July 2016, Vare paid off an FHA-insured loan held by PNC.

9.    Defendant PNC Bank, N.A. is a Pittsburgh, Pennsylvania-based mortgage company.  PNC held FHA-insured loans for Plaintiff and other class members.  These loans have been paid off in full.

10.    PNC's corporate headquarters is located at 300 Fifth Avenue, The Tower at PNC Plaza, Pittsburgh, PA 15222.  Thus, PNC is a citizen of Pennsylvania.

**Jurisdiction**

11.    This Court has subject matter jurisdiction over this class action.  Many putative class members are citizens of states different than PNC.  *See* 28 U.S.C. § 1332 (d)(2).  Upon information and belief, the claims of the class in the aggregate exceed the minimally required amount in controversy.  *See* 28 U.S.C. § 1332 (d)(6).

12.    This Court has personal jurisdiction over PNC.  Among other things, PNC is registered to and does conduct business in California, holds mortgages on real property in California, has caused injuries in California, and generally engages in substantial activity in California.

13.    This Court is also a proper venue for this action because the real property secured by the debt evidenced by the Note is located in this District and a substantial part of the events or omissions giving to rise to the claim occurred in this District.

**Factual Allegations**

**A.    Borrowers Pay For and the FHA Supplies Mortgage Insurance to Lenders.**

14.    Department of Housing and Urban Development is a department within the

executive branch of the United States government.  HUD was established in 1965 by the Department of Housing and Urban Development Act.  *See* 42 U.S.C. § 3532.  The Federal Housing Administration was established in 1934 by the National Housing Act of 1934.  *See* 12 U.S.C. § 1701.  When HUD was created, Congress re-organized the FHA as an agency within HUD.

15.    Among other things, the FHA provides mortgage insurance to HUD-approved lenders for loans on single-family homes.  *See* U.S. Dep't of Housing and Urban Devt., http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory.  The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single family homes.  *Id.*

16.    Mortgage insurance protects lenders against losses that are caused by borrower defaults.  The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default.  *Id.*  In exchange for FHA mortgage insurance, borrowers pay an upfront mortgage insurance premium and also make monthly premium payments.

17.    To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA.  Lenders must also comply with FHA regulations, including but not limited to the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations.  Among other things, FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note.  As a result, each of the approximately 4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

**B.    The FHA Prohibits Lenders From Collecting Post-Payment Interest On FHA-Insured Loans, Unless They Provide The FHA-Approved Form Disclosure.**

18.    One uniform provision lenders must include in the promissory note for every FHA-insured loan addresses the borrower's promise to pay interest for unpaid principal:

2.    BORROWER'S PROMISE TO PAY; INTEREST
        In return for a loan received from Lender, Borrower promises to pay the principal sum of _____ Dollars (U.S. $ _____), plus interest, to the order of Lender.  **Interest will be charged on unpaid principal**, from the date of disbursement of the loan proceeds by Lender, at the rate of _____ percent ( _____ %) per year **until the full amount of the principal has been paid**.

Multistate – FHA Fixed Rate Note, USFHA.NTE at 1 (emphasis added).

19.    Under this provision, the borrower agrees to pay interest only on the **unpaid**

**principal**, and once the borrower pays the full unpaid principal, interest no longer accrues. Understandably, by definition, interest is calculated from the amount of the outstanding principal loaned by the lender to the borrower.

20.    In fact, when lenders issue loans backed by Fannie Mae, Freddie Mac, and the Department of Veterans Administration, interest charges stop on the day the borrower pays the full unpaid principal of the loan, and the lender cannot collect any post-payment interest.

21.    However, for nearly thirty years, the FHA maintained a policy different from the other government agencies.  For mortgages insured by the FHA on or after August 2, 1985, and through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest even after the borrower has paid the full amount of the unpaid principal.

22.    This type of interest is often referred to as "post-payment" interest.  Post-payment interest is interest that a lender collects even after the borrower has paid the full unpaid principal. It is also considered a "penalty" because, at that point, the borrower owes the lender **nothing**: the full unpaid principal has been paid, and the lender has all the money it was owed.  The lender is penalizing the borrower for paying the loan before the maturity date.

23.    Although the FHA permits lenders to collect post-payment interest, the FHA has imposed strict limitations on the lender's ability to do so. The FHA prohibits lenders from collecting post-payment interest unless the lender complies with FHA regulations.  And the FHA regulations require the lender to provide the borrower with the HUD-approved disclosure form.

24.    The limitations on post-payment interest are reflected in a uniform provision of the note, which again must be included in the note for every FHA-insured loan:

5.    BORROWER'S RIGHT TO PREPAY
**Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty, on the first day of any month**. Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on the amount prepaid for the remainder of the month **to the extent required by Lender and permitted by regulations of the Secretary**.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Multistate – FHA Fixed Rate Note, USFHA.NTE (emphasis altered) at 2.[1]

25.     Under this provision, the borrower has the right to prepay the full unpaid principal without charge or penalty on the **first** of the month.  The borrower also has the right to prepay the full unpaid principal on days **other than** the first; provided however that, in such cases, the lender can collect post-payment interest for the remainder of that month **if the lender complies with FHA regulations**.

26.     The relevant FHA regulation is titled "Handling Prepayments" and provides that:

(a) Notwithstanding the terms of the mortgage, the [lender] may accept a prepayment at any time and in any amount.  **Except as set out below, monthly interest on the debt must be calculated on the actual unpaid principal balance** of the loan.
. . .
(c) If the prepayment is offered on other than an installment due date [the first of the month], the [lender] may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, **but only if the [lender] so advises the [borrower], in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment.
. . .
(e) If the [lender] **fails to meet the full disclosure requirements of paragraphs (b) and (c) of this section, the [lender] may be subject to forfeiture** of that portion of interest collected for the period beyond the date that prepayment in full was received and to such other actions as are provided in part 25 of this title.

24 C.F.R. § 203.558 (2014) (emphasis added).

27.     Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the HUD-approved form, then, and only then, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

28.     For convenience of lenders, for mortgages insured on or after August 2, 1985, and through January 20, 2015, HUD included an approved form as Appendix 8 (C) to the HUD Housing Handbook:

MORTGAGEE NOTICE TO MORTGAGOR
(In response to prepayment inquiry, request for payoff or tender of prepayment in

---

[1] Plaintiff's note is a fixed rate note, and for FHA fixed rate notes, the uniform provision regarding the borrower's right to prepay is located at section 5.  For FHA adjustable rate notes, the same uniform provision regarding the borrower's right to prepay is located at section 6.  There is no difference in the relevant language.

full)

Mortgagor: _____    Date: _____
Address: _____    Loan #: _____
_____    FHA#: _____

      This is in reply to your _____(date)_____ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

      This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

      The _____(mortgagee name)_____ will:

(a)    [ ]    accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or

(b)    [ ]    only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]

---

      NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

      If you have any questions regarding this notice, please contact _____(name and/or department) ___at___(telephone number)___.


_____
Mortgagee

Attachment (Pay off Statement)

HUD Housing Handbook, 4330.1 REV-5 Appendix 8 (C) at 1-2.

    29.    As HUD explains, "[t]he **basic disclosure** language is necessary because it pertains to the [borrower's] rights under the mortgage." HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5-1 (C), at 2, attached as Exhibit 2.

    30.    HUD also confirms that the lender "**must disclose** the procedures that must be followed with respect to the payoff and **must explain** how the amount of the prepayment has been

determined. **Otherwise**, **the** [**lender**] **must forfeit any interest collected after the date of prepayment**." *Id.* at 6. (emphasis added)

31.    In May 2016, HUD Handbook 4000.1 went into effect and reiterates the requirement that lenders must provide borrowers with an approved disclosure form as a condition to charging post-payment interest.

32.    For example, Handbook 4000.1 states that, "[w]hen notified of the Borrower's intent to prepay a Mortgage, the Mortgagee **must** send to the Borrower directly the **Payoff Disclosure** and copy of the payoff statement." The Payoff Procedure Disclosure Form is found on HUD's forms webpage and is hyperlinked in the handbook. The handbook also states "this option [*i.e.,* post-payment interest] may **only** be used if the Mortgagee has provided the Payoff Disclosure to the Borrower."

33.    The handbook also states "this option [*i.e.*, post-payment interest] may **only** be used **if the Mortgagee has provided the Payoff Disclosure to the Borrower**."    Section III.A.1.e.v.(C)(2)(a).    The relevant sections of the Handbook 4000.1 addressing the Payoff Disclosure are attached as Exhibit 3.

34.    HUD makes a document titled "Prepayment Disclosure Statements" available on its website:    https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/model_ documents.  The Payoff Disclosure is attached as Exhibit 4.

35.    HUD Handbook 4000.1 contains the hyperlinked words "Payoff Disclosure," which is linked to the Handbook's "Supplemental Documents" website, which contains a link to the page with the model form "Prepayment Disclosure Statements."

36.    Likewise, a Frequently Asked Questions page linked from and accessible through the HUD website contains the question "Is there a current Payoff Procedure Disclosure for FHA Loans?"

37.    The answer to the FAQ is: "Yes, in response to a prepayment inquiry, request for payoff, or tender of prepayment in full, **mortgagees must use the Payoff Procedure Disclosure notice** provided on the Single Family Mortgages Model Documents webpage at: https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/model_documents

The specific link is at:

https://portal.hud.gov/hudportal/documents/huddoc?id=SFPayoffProcDisc.pdf"

38.    In sum, pursuant to the uniform provisions of the note the HUD Handbooks, and

HUD regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day **other than** the first of the month and (b) the lender has provided the borrower **the HUD-approved form**. If the lender satisfies both of those requirements, only then can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

**C.    Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans.**

39.    From August 2, 1985 through January 20, 2015, lenders including PNC have collected billions of dollars in post-payment interest.

40.    The National Association of Realtors estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments." Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*, Chicago Tribune, Apr. 11, 2004, http://articles.chicagotribune.com/2004-04-11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers. The NAR further "estimate[s] that during 2003, . . . FHA customers who terminated their loans paid an average of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of **$587 million**." *Id.* (emphasis added).

41.    "HUD doesn't get the interest, lenders do. In effect, **lenders are getting interest for money that isn't outstanding**. This may not sound like a big deal, but according to HUD, such post-payment interest charges cost borrowers **$449 million** in 2012." Peter Millar, *The Very New Deal: How FHA Mortgages Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015, http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-changing-in-2015/ (emphasis added).

42.    "This practice . . . has cost consumers staggering amounts, with estimates ranging into the **hundreds of millions of dollars a year** during periods when mortgage rates were high." Kenneth R. Harney, *FHA Will Stop Lenders From Charging Extra Interest When Homeowners Sell or Refinance*, Washington Post, Sep. 5, 2014, https://www.washingtonpost.com/realestate/fha-will-stop-lenders-from-charging-extra-interest-when-homeowners-sell-or-refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html (emphasis added).

43.    "[**T**]**he clear loser** in the full-month interest policy **is 'the one who least can**

**afford it, the consumer**."   Harney, Chicago Tribune, Apr. 11, 2004 (emphasis added). "**Hundreds of thousands of home sellers have had their pockets picked** at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off."  Harney, Washington Post, Sep. 5, 2014 (emphasis added).

44.    Meanwhile, "**the true beneficiaries** of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors."  Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330 (emphasis added).

45.    All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

46.    On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties.  74 Fed. Reg. 43232, 43232 (Aug. 26, 2009).  The Board stated that "[o]ne such example [of a prepayment penalty] is 'interest charges for any period after prepayment in full is made.'  **When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate**."  *Id.* at 43257 (emphasis added).

47.    On January 30, 2013, the Consumer Financial Protection Bureau issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)."  *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013).  Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due."  *Id.* at 6444.

48.    This definition includes "charges resulting from FHA's monthly interest accrual amortization method."  79 Fed. Reg. 50835, 50835 (Aug. 26, 2014).  As CFPB explains:

[I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties . . . .  In such instances, **the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received**.  The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

49.     Based on Regulation Z's definition, charges for post-payment interest are now subject to the Truth in Lending Act.  *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sep. 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

50.     In response to those changes by FRB and CFPB, on March 13, 2014, "HUD published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest."  79 Fed. Reg. 50835, 50835.  And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges."  *Id.*

51.     Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount."  24 C.F.R. § 203.558 (a).  "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date."  *Id.*

52.     Although CFPB, FRB, and HUD have now all prohibited post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they **did not** make this change retroactive.  "[T]he estimated **7.8 million existing FHA mortgage borrowers** who are not covered by the forthcoming policy change **will continue to be vulnerable** to paying more than they should."  Harney, Los Angeles Times, Mar. 30, 2014 (emphasis added).

**D.     PNC Did Not Provide A FHA or HUD-Approved Disclosure To Plaintiff Before Collecting Post-Payment Interest.**

53.     PNC was the holder of legal title to a mortgage secured by Vare's home located at 306 Summerwood Drive, American Canyon, California 94503.  Vare's loan was insured by the FHA, and so PNC is required to comply with FHA regulations with respect to her loan.

54.     Pursuant to FHA regulations, Vare's promissory note contains certain uniform provisions found in the note for every FHA-insured loan. These uniform provisions include, among others, section 2 titled "Borrower's Promise to Pay; Interest" and section 5 titled "Borrower's Right to Prepay." *See* Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1-2.

55.     In or around July 2016, Vare decided to refinance her loan with PNC, and requested

that PNC provide her with a payoff statement.

56.    PNC provided a payoff statement dated July 1, 2016.  The statement is a form document, in which PNC uses form language throughout the document and fills in only the particular numbers and address information that correspond to a specific borrower.

57.    Vare's interest payments were $1,227.16 per month.  Thus, by representing that Vare owed $1,227.16 in interest, PNC charged and sought to collect interest for the entire month of July, even though the payoff statement was issued on July 1, 2016 and the loan was paid off in full on July 16, 2016.

58.    On July 16, 2016, Vare paid off her loan in full, including interest through July 31, 2016, which PNC represented it was owed.  And because PNC required Vare to pay interest for the entire month of July – even though she paid the full unpaid principal on July 16, 2016 – PNC collected post-payment interest.

59.    However, PNC did not first provide Vare with a HUD-approved form.

60.    Appendix 8(c) to HUD Handbook 4330.1 rev-1 is nearly a page long, has a capitalized title (MORTGAGE NOTICE TO MORTGAGER) and provides four easy-to-read, distinct paragraphs labeled (a), (b), (c), and (d) with options of how interest will be charged, along with boxes for the lender to check the applicable option, and a place for the lender to sign at the bottom.

61.    Similarly, the disclosure form appended to HUD Handbook 4000.1 is nearly a full page long, has a capitalized title (PAYOFF PROCEDURE DISCLOSURE) and four easy-to-ready distinct paragraphs with boxes for the lender to check the applicable option, and a place for the lender to sign at the bottom, emphasizing the significance of the documents to the borrowers.

62.    PNC's unapproved payoff statement is nothing like Appendix 8(c) or the Payoff Procedure Disclosure Form.

63.    Principally, PNC's unauthorized form does not contain **any** of the post-payment disclosure language required by FHA and HUD, or indeed, any language at all notifying borrowers that PNC intended to collect interest through the end of the month after the loan was paid off and how to avoid the accrual of the interest.  PNC's form says at all nothing about how borrowers can avoid post-payment interest entirely.

64.    The effect of PNC's illegal collection of post-payment interest is that Plaintiff was charged interest twice – by PNC and her new lender – for the period between the date of the closing

and the end of the month.

**Class Action Allegations**

65.     Plaintiff asserts claims on behalf of herself and a class of similarly-situated persons pursuant to Federal Rule 23:

66.     Plaintiff currently proposes the following classes:

**California UCL Subclass:**

Any person who had an FHA-insured loan secured by real property located in the State of California for which (i) the Date of the Note is during a period beginning on June 1, 1996 and ending on January 20, 2015; (ii) PNC – as of the date the total amount due on the loan was brought to zero – was the Lender, Mortgagee, or otherwise held legal title to the Note; (iii) within the applicable statute of limitations PNC collected interest for any period after the total amount due on the loan was brought to zero (i.e., PNC collected "post-payment interest.

**Nationwide Breach of Contract Class:**

Any person who had an FHA-insured loan secured by real property located in the United States for which (i) the Date of the Note is during a period beginning on June 1, 1996 and ending on January 20, 2015; (ii) PNC – as of the date the total amount due on the loan was brought to zero – was the Lender, Mortgagee, or otherwise held legal title to the Note; and (iii) within the applicable statute of limitations, PNC collected interest for any period after the total amount due on the loan was brought to zero (i.e., PNC collected "post-payment interest").

67.     Plaintiff proposes certification of all issues, while reserving the right to alternatively seek certification as to any specific claim or issue.

68.     Plaintiff would serve as the class representative.

69.     Plaintiff satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

        a.    <u>Numerosity</u> – The class is so numerous that joinder is impracticable. The FHA is the largest insurer of mortgages in the world, currently insuring around 4.8 million single family homes. Plaintiff estimates that the class consists of thousands of persons.

b.    <u>Commonality</u> – There are numerous common questions of law and fact, including but not limited to the following:

    i.    Whether, before collecting post-payment interest, PNC complied with the contractually-incorporated HUD regulation requiring that it provide the borrowers with an approved disclosure.

    ii.    Whether and when PNC knew that it failed to make required disclosures relating to post-payment interest.

    iii.    Whether PNC breached the note by collecting post-payment interest to which it was not entitled.

    iv.    Whether PNC engaged in unlawful or unfair business practices with respect to the collection of post-payment interest.

    v.    Whether PNC's conduct violated the note, regulations. Business & Professional Code § 17200, *et. seq.,* Business & Professions Code § 17500 and the common law of unjust enrichment.

    vi.    Whether PNC breached the contract with Plaintiff and Class Members by providing a payoff amount which overcharged Plaintiff and Class Members.

    vii.    Whether Plaintiff and Class Members are entitled to restitution.

    viii.    Whether Plaintiff and Class Members are entitled to damages.

    ix.    Whether Plaintiff and Class Members are entitled to equitable relief and if so, the nature of the relief.

c.    <u>Typicality</u> – Plaintiff's claims are typical of the classes' claims. Plaintiff's promissory note is not just typical of the rest of the class, but is identical with respect to the relevant provisions at issue in this case. Further, because PNC uses form payoff statements, Plaintiff has been subject to conduct that is typical of the rest of the class. PNC has sought to collect post-payment interest from Plaintiff in the same manner that it has sought to collect post-payment interest from the rest of the class.

d.    <u>Adequacy</u> – Plaintiff would adequately protect the class's interests. Plaintiff has a genuine interest in protecting the rights of the class and Plaintiff's counsel is experienced in handling complex class actions.

Indeed, Plaintiff's counsel have been designated and approved as class counsel in numerous state and federal courts, including in actions obtaining recovery of post-payment interest charges. Further, because Plaintiff challenges form payoff statements used by PNC, the interests of Plaintiff and the class are aligned.

e.    There is a well-defined community of interest among Class members, and the disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court.

f.    Predominance – The answers to the common questions in this case will decide liability for the entire class. If Plaintiff establishes that PNC's practice of collecting post-payment interest without making the approved disclosure required under the note and HUD regulations violates the UCL, it will establish liability for all class members, without the need for any additional proof as to liability. Thus, common issues predominate over individual issues.

g.    Superiority – A class action is superior to other available remedies. The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action. Further, because of the low dollar amounts at stake for each class member, a class action is the only way for Plaintiff and other class members to obtain redress. Moreover, the most efficient way to resolve the class's claims is for a court to decide all claims in a single class. Requiring thousands of class members to individually litigate their claims over and over again in various courts would be vastly inefficient. It also raises the possibility of inconsistent judgments or conflicting declaratory and injunctive relief.

## FIRST CAUSE OF ACTION

**(Violation of California Unfair Competition Law – Unlawful and Unfair Business Practice)**

70.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

71.    California Business & Professions Code § 17200, *et seq.* prohibits acts of unfair competition, which include, without limitation, unlawful and unfair business practices, each of

which is separately actionable.

72.     PNC acted unlawfully and unfairly by collecting post-payment interest payments without first disclosing the charges and how to avoid them to Plaintiff and Class members in a form approved by HUD.

73.     PNC's practice was unlawful in that it violated 24 C.F.R.§ 203.558 and the note.

74.     The practice was unfair in that it is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers. The financial injury to consumers by Defendant's conduct greatly outweighs any alleged countervailing benefit.

75.     The injury to consumers by Defendant's conduct is not an injury that consumers themselves could reasonable have avoided because of Defendant's omission of material fact.

76.     Plaintiff suffered an injury-in-fact from PNC's unlawful and unfair conduct in the form of paying interest that they were not required to pay under HUD regulations or their contracts.

77.     PNC's unlawful and unfair conduct caused Plaintiff and Class members harm.

78.     Plaintiff and Class members would not have paid, and would not have agreed to pay, post-payment interest had PNC properly disclosed the interest charges in response to their requests for payoff. Instead, they would have scheduled the closing of their refinance for the last business day of the month or the first business day of the following month.

79.     To this day, Defendant has engaged and continues to engage in unlawful and unfair business practices by keeping the interest it unlawfully and unfairly collected and failing to inform Plaintiff and Class members of its illegal practices.

80.     As a direct and proximate cause of Defendant's unlawful and unfair practices, Plaintiff and Class members have suffered actual damages in that they have paid interest that they did not owe.

81.     As a proximate result of its unlawful and unfair practices, Defendant has been unjustly enriched and should be required to make restitution to the Plaintiff and Class members pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

### SECOND CAUSE OF ACTION
### (Breach of Contract)

82.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

83.     Plaintiff and Class Members had contracts with PNC.  The terms of the contract are

set forth in the promissory notes between Plaintiff and Class Members and PNC.  The note is a form contract containing certain provisions that are identical to provisions found in the promissory notes for every FHA-insured loan.

84.    In Section 2 of the note, titled "BORROWER'S PROMISE TO PAY; INTEREST," PNC agreed that "[i]nterest will be charged on unpaid principal" and only "until the full amount of the principal has been paid."  Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1.

85.    In section 5 of the note, titled "BORROWER'S RIGHT TO PREPAY," PNC agreed that it would charge "interest on the amount prepaid for the remainder of the month" only "to the extent . . . permitted by regulations of the Secretary."  Id. at 2.

86.    And the relevant FHA regulation, titled "Handling Prepayments," provides that, "[e]xcept as set out [in this regulation], monthly interest on debt must be calculated on the actual unpaid principal balance of the loan."  24 C.F.R. § 203.558 (2014).  "If the prepayment is offered on other than an installment due date [the first of the month], the [lender] . . . may require payment of interest to that date, but only if [the lender] so advises the [borrower], in a form approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment."  Id.

87.    In addition to the express terms of the promissory note between Plaintiff and PNC, the law also implies a duty of good faith and fair dealing in every contract, and PNC is subject to this duty as well.

88.    PNC breached the contract, including the duty of good faith and fair dealing, by collecting post-closing interest payments from Plaintiff without first providing her with FHA-approved notice in response to her inquiry, request for payoff figures, or tender of prepayment.  Plaintiff and Class Members reasonably relied on the payoff amounts that PNC provided them, which amounts were materially incorrect.

89.    Plaintiff was damaged by PNC's breach, and she seeks damages for PNC's improper collection of post-closing interest payments.  Plaintiff seeks damages for interest collected for the period beyond the date PNC received full repayment of the unpaid principal.

**<u>Relief Requested</u>**

Plaintiff asks this Court to:

a.   certify this action as a class action, including appointing  Plaintiff as class representative and undersigned counsel as class counsel;

b.   grant judgment as a matter of law in favor of Plaintiff and the class on any or all issues or, in the alternative, hold a jury trial to decide any disputed fact questions;

c.   award Plaintiff and class members any restitution, damages, and other relief they are entitled to, including but not limited to, return of any post-payment interest collected, statutory damages and penalties, attorney fees, pre-judgment interest, post-judgment interest, and costs;

d.   enjoin PNC from continuing the unlawful practices set forth herein;

e.   and order any other relief as the Court may deem proper and just.

DATED:  May 21, 2018

**ROBINS KAPLAN LLP**

By:  _____/s/ Michael F. Ram_____
         Michael F. Ram (SBN 104805)
         Susan S. Brown (SBN 287986)

2440 West El Camino Real
Suite 100
Mountain View, CA 94040
Telephone:  650 784 4040
Facsimile:  650 784 4041
mram@robinskaplan.com
sbrown@robinskaplan.com

**EPPS, HOLLOWAY, DELOACH
& HOIPKEMIER, LLC**

Adam Hoipkemier (GABN 745811)
Kevin Epps (GABN 785511)
1220 Langford Drive
Building 200-101
Watkinsville, GA 30677
Telephone:  706 508 4000
Facsimile:  706 842 6750
adam@ehdhlaw.com
kevin@ehdhlaw.com

(*Pro Hac Vice Applications to be Filed*)

**TURKE & STRAUSS LLP**

Samuel Strauss
sam@turkestrauss.com
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
Telephone: 608 237 1774
Facsimile: 608 5094423

(*Pro Hac Vice Application to be Filed*)

*Attorneys for Plaintiff and the Proposed Class*